FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2012 OCT 18  PM 4:48

LORETTA G. WHYTE
CLERK

SEALED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**



# FELONY

**SUPERSEDING INDICTMENT FOR VIOLATIONS OF THE RACKETEER**
**INFLUENCED CORRUPT ORGANIZATION ACT, THE VIOLENT CRIME IN AID OF**
**RACKETEERING ACT, THE FEDERAL CONTROLLED SUBSTANCES ACT,**
**THE FEDERAL GUN CONTROL ACT, PERJURY, MONEY LAUNDERING,**
**MISPRISION OF A FELONY AND OBSTRUCTION OF JUSTICE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO. 12-001** |
| **v.** | * | **SECTION: "F"** |
| **WALTER PORTER** | * | |
| a/k/a "Urkel," a/k/a "Moonie" | | **VIOLATIONS:** 18 U.S.C. § 1962(d) |
| **ANDRE HANKTON** | * | 18 U.S.C. § 1959 |
| **NAKIA HANKTON** | | 18 U.S.C. § 924 |
| **SHIRLEY HANKTON** | * | 18 U.S.C. § 922(g)(1) |
| **TELLY HANKTON** | | 18 U.S.C. § 1956(h) |
| a/k/a "Third," a/k/a "Wild" | * | 18 U.S.C. § 1623 |
| **THOMAS HANKTON** | | 18 U.S.C. § 371 |
| a/k/a "Squirt" | * | 18 U.S.C. § 3 |
| **TROY HANKTON** | | 18 U.S.C. § 1512 |
| **GEORGE JACKSON** | * | 21 U.S.C. § 841 |
| a/k/a "Black" | | 21 U.S.C. § 846 |
| **KEVIN JACKSON** | * | 26 U.S.C. § 5861 |
| **NETTHANY SCHEXNAYDER** | | |
| **DERRICK SMOTHERS** | * | |
| a/k/a "Dump" | | |
| **TERRELL SMOTHERS** | * | |
| **SANA JOHNSON** | | |
| | * | |
| * | * | * |



The Grand Jury charges that:

## COUNT 1
### (Racketeer Influenced and Corrupt Organizations Conspiracy)

### General Allegations

1. At all relevant times, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, a/k/a "Third," a/k/a "Wild," THOMAS HANKTON, a/k/a "Squirt," TROY HANKTON, GEORGE JACKSON, a/k/a "Black,"  WALTER PORTER, a/k/a "Urkel," a/k/a "Moonie," DERRICK SMOTHERS, a/k/a "Dump,"** and **TERRELL SMOTHERS**, and others known and unknown to the Grand Jury, were members and associates of an organization engaged in, among other things, conspiracy to distribute controlled substances, distribution of controlled substances, murder, conspiracy to commit murder, and attempted murder.  At all relevant times, this organization operated in the Eastern District of Louisiana and elsewhere.

2. This organization has historically encompassed the Uptown Central City area of New Orleans, Louisiana, and was primarily concentrated in the area bordered by Jackson Avenue, St. Andrew Street, Simon Bolivar and Oretha Castle Haley, with the nucleus of the territory being on Josephine Street from 1996 to the present.

### The Racketeering Enterprise

3. The organization, including its leadership, membership, and associates, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise engaged in, and its activities affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members

functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

4. The purposes of the enterprise include, but are not limited to, the following:

    a.    Enriching the members and associates of the enterprise through, among other things, the control of and participation in the distribution of controlled substances in the territory controlled by the enterprise;

    b.    Enriching the members and associates of the enterprise through, among other things, violence and threats of violence, assault and murder;

    c.    Preserving and protecting the power, territory and profits of the enterprise through the use of intimidation, violence, threats of violence, assault and murder;

    d.    Promoting and enhancing the activities and authority of the enterprise and its members and associates;

    e.    Keeping victims, potential victims, and witnesses in fear of the enterprise and in fear of its members and associates through violence and threats of violence;

    f.    Providing financial support and information to members of the enterprise, including those who were incarcerated for committing acts of violence, distribution of controlled substances and other offenses; and

    g.    Providing assistance to members of the enterprise who committed crimes for and on behalf of the enterprise in order to hinder, obstruct and prevent

law enforcement officers from identifying the offender or offenders, apprehending the offender or offenders, and prosecuting and punishing the offender or offenders.

### Means and Methods of the Enterprise

5.  Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise, included but were not limited to, the following:

a.  Members of the enterprise and their associates committed, attempted and threatened to commit acts of violence, including murder, to protect and expand the criminal operations of the enterprise.

b.  Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence.

c.  Members of the enterprise and their associates used and threatened to use physical violence against various individuals.

d.  Members of the enterprise and their associates engaged in the distribution of controlled substances as a means to generate income.

e.  Members of the enterprise possessed and utilized firearms to prevent competition from other drug dealers in and around the geographic area used and controlled by the enterprise.

f.  Members of the enterprise possessed and utilized firearms in order to protect their business of distributing in controlled substances.

4

g.    Members of the enterprise possessed and utilized firearms to maintain and advance the goals of the enterprise.

h.    Members of the enterprise purchased, maintained and circulated a collection of firearms for use in criminal activity by the enterprise members.

i.    Members of the enterprise and their associates used telephones, even while in jail, to give directions and advice to each other in an effort to circumvent the criminal justice system, obstruct justice, distribute controlled substances, and attempt to intimidate witnesses.

j.    Members of the enterprise and their associates committed shootings, various firearms offenses, and violent acts, including but not limited to murder, attempted murder, aggravated battery, illegal possession of a firearm, and aggravated assault in order to maintain and advance the goals of the enterprise, the individual conspirator's role within the enterprise and to control the specific geographic area utilized and controlled by the conspirators.

k.    Members of the enterprise and their associates committed, attempted to commit, and threatened to commit acts of violence in an effort to obstruct justice and thwart police investigations.

l.    Members of the enterprise imposed discipline on associates who may have acted in a reckless manner by bringing unwanted attention of law enforcement officials.

m.      Members of the enterprise attempted to kill and killed members who were disobedient to the leaders of the enterprise.

n.      Members of the enterprise and their associates facilitated the commission of perjury and committed perjury in an effort to circumvent the criminal justice system and obstruct justice.

### The RICO Conspiracy Charge

6. Beginning on a date unknown, but prior to January 1996, and continuing to the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, a/k/a "Third," a/k/a "Wild," THOMAS HANKTON, a/k/a "Squirt," TROY HANKTON, GEORGE JACKSON, a/k/a "Black," WALTER PORTER, a/k/a "Urkel," a/k/a "Moonie," DERRICK SMOTHERS, a/k/a "Dump,"** and **TERRELL SMOTHERS**, and others known and unknown to the Grand Jury, being persons employed by and associated with the criminal enterprise, as described in paragraphs 1 and 2 of the General Allegations, paragraphs 3 through 5 of this Count, and sub-paragraphs 1 through 101 of the Overt Acts section of this Count, and incorporated herein, which enterprise engaged in and the activities of which affected interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts:

6

a.    involving murder, in violation of Title 14, Louisiana Revised Statutes, Sections 24 (Principals), 26 (Criminal Conspiracy), 27 (Attempt), 30 (First Degree Murder), and 30.1 (Second Degree Murder);

b.    involving bribery, in violation of Title 14, Louisiana Revised Statute 118(A)(1)(d);

c.    indictable under Title 18, United States Code, Section 1956, and;

d.    involving trafficking in controlled substances, and possession with the intent to distribute controlled substances, including cocaine base (crack cocaine), cocaine hydrochloride (powder cocaine), heroin, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

7.  It was further a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

## Roles of the Defendants[1]

8.  The members of the enterprise would and did occupy the following roles, among others, in the enterprise:

a.    Defendant **TELLY HANKTON** acted as a leader and principal supplier for the enterprise, and as a distributor of controlled substances and gunman for the enterprise.

b.    Defendant **THOMAS HANKTON** acted as a leader and principal supplier for the enterprise and as a distributor of controlled substances.

---

[1] Defendants' aliases are outlined in Part I of the Superseding Indictment, and will not be referred to in other parts of the document.

7

c.     Defendant **TROY HANKTON** acted as a distributor of controlled substances and as a gunman for the enterprise.

d.     Defendant **WALTER PORTER** acted as gunman for the enterprise.

e.     Defendants **DERRICK SMOTHERS, TERRELL SMOTHERS, NAKIA HANKTON,** and **GEORGE JACKSON** were distributors of controlled substances for the enterprise.

f.     **SHIRLEY HANKTON** was an organizer, communicator, and facilitator for the enterprise and its leaders, and laundered its money, committed perjury and obstructed justice.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON,** a/k/a "Third," a/k/a "Wild," **THOMAS HANKTON,** a/k/a "Squirt," **TROY HANKTON, GEORGE JACKSON,** a/k/a "Black," **WALTER PORTER,** a/k/a "Urkel," a/k/a "Moonie," **DERRICK SMOTHERS,** a/k/a "Dump," and **TERRELL SMOTHERS,** and others known and unknown to the Grand Jury, committed various overt acts, on or about the following times and dates, in the Eastern District of Louisiana and elsewhere, including but not limited to the following:

1.     Sometime between 1994 to 1997, **THOMAS HANKTON** and **TELLY HANKTON** would regularly purchase kilogram quantities of cocaine hydrochloride (cocaine powder) from a source of supply in the New Orleans Metropolitan Area.

2.     On or about November 5, 1996, defendant **THOMAS HANKTON** possessed and distributed a quantity of cocaine base (crack cocaine), which he stored in his red Pontiac Grand Am.

8

3.  On or about November 5, 1996, defendant **THOMAS HANKTON** escaped arrest by New Orleans Police Officers by fleeing on a bicycle.

4.  On or about November 5, 1996, an associate accessed defendant **THOMAS HANKTON'S** red Pontiac Grand Am with a key and attempted to remove defendant **THOMAS HANKTON'S** cocaine base (crack cocaine), which was located in the center console of the car.

5.  On or about January 30, 1997, defendant **THOMAS HANKTON** possessed a quantity of cocaine hydrochloride (cocaine powder) and a quantity of cocaine base (crack cocaine) on his person.

6.  On or about January 30, 1997, defendant **THOMAS HANKTON** possessed a quantity of cocaine hydrochloride (cocaine powder) and a quantity of cocaine base (crack cocaine) and $24,155, which was found in his apartment at 4916 Zenith Street, Apt. 223.

7.  Sometime in June 1997, defendants **THOMAS HANKTON** and **NAKIA HANKTON** traveled to Houston, Texas to purchase over two kilograms of cocaine hydrochloride (cocaine powder).

8.  On or about June 24, 1997, defendant **NAKIA HANKTON**, while in Houston, Texas, purchased two one-way bus tickets to New Orleans, Louisiana, under a false name, and gave one of the bus tickets to defendant **THOMAS HANKTON**.

9.  On or about June 24, 1997, defendants **NAKIA HANKTON** and **THOMAS HANKTON** boarded a bus in Houston, Texas, destined for New Orleans, Louisiana, with a bag containing over two kilograms of cocaine hydrochloride (cocaine powder).

10. Sometime between 1998 to 2003, **TELLY HANKTON** purchased 5 to 6 kilograms of cocaine hydrochloride (cocaine powder) approximately every two weeks from a source of supply in the New Orleans Metropolitan Area.

11. On or about February 26, 1999, **NAKIA HANKTON** possessed and distributed a quantity of cocaine base (crack cocaine).

12. On or about March 3, 1999, **DERRICK SMOTHERS** and **TERRELL SMOTHERS** shot T.B. within the territory of the enterprise.

13. Sometime between 1998-1999, an associate purchased one to two kilograms of cocaine hydrochloride (cocaine powder) from **TELLY HANKTON** on several occasions.

14.     Sometime in the year 2000, **SHIRLEY HANKTON** moved **TELLY HANKTON'S** cocaine hydrochloride (cocaine powder) in an effort to evade detection from law enforcement officers.

15.     On or about May 8, 2000, F.H., an associate, was storing large quantities of drugs and/or money for **TELLY HANKTON**.

16.     On or about May 9, 2000, **TELLY HANKTON** and another associate threatened a known individual with a firearm over stolen drugs and/or money taken from F.H.'s house.

17.     On or about May 22, 2000, **TELLY HANKTON** shot at F.H. over stolen drugs and/or money that F.H. was storing for **TELLY HANKTON.**

18.     On or about sometime between May 8, 2000, and May 22, 2000, F.H. told **TELLY HANKTON** that F.H.'s daughter, V.B., had keys to his house and that V.B. and C.F. stole **TELLY HANKTON'S** drugs from F.H.'s house.

19.     Sometime in May 2000, **SHIRLEY HANKTON** met with a known individual after **TELLY HANKTON** was arrested for threatening a known individual with a firearm, after which the charges against **TELLY HANKTON** were dropped.

20.     On or about sometime in May/June 2000, **TELLY HANKTON** discussed with an associate that **TELLY HANKTON** was going to kill his cousin, V.B., for stealing his drugs.

21.     On or about June 12, 2000, V.B., the daughter of F.H., and C.F., who were believed to have stolen **TELLY HANKTON'S** drugs and/or money from F.H.'s house, were shot and killed.

22.     On or about August 3, 2000, **DERRICK SMOTHERS** possessed a quantity of cocaine base (crack cocaine), a quantity of cocaine hydrochloride (cocaine powder), ammunition and money.

23.     Sometime in 2001, **NAKIA HANKTON** directed an associate to retrieve ½ kilogram of cocaine hydrochloride (cocaine powder) from the backyard of a Josephine Street residence, where **TELLY HANKTON** had earlier placed it.

24.     On or about January 31, 2001, **TERRELL SMOTHERS** and others distributed cocaine base (crack cocaine).

25.     On or about February 8, 2001, **TERRELL SMOTHERS** and others were in possession of a quantity of cocaine base (crack cocaine), a quantity of marijuana, two firearms and ammunition.

10

26.   On or about April 3, 2001, **DERRICK SMOTHERS** and **NAKIA HANKTON** distributed multi-ounce quantities of cocaine hydrochloride (cocaine powder).

27.   On or about April 3, 2001, **NAKIA HANKTON** counted money given to him for the purchase of multi-ounces of cocaine hydrochloride (cocaine powder).

28.   On or about April 3, 2001, **DERRICK SMOTHERS** possessed and distributed a quantity of cocaine hydrochloride (cocaine powder) to an undercover Drug Enforcement Administration special agent.

29.   On or about April 25, 2001, **DERRICK SMOTHERS** possessed and distributed a quantity of cocaine hydrochloride (cocaine powder) to an undercover Drug Enforcement Administration special agent.

30.   On or about April 26, 2001, **DERRICK SMOTHERS** discussed cooking powder cocaine into crack cocaine with an undercover Drug Enforcement Administration special agent.

31.   On or about May 9, 2001, **DERRICK SMOTHERS** discussed the distribution of two ounces of cocaine hydrochloride (cocaine powder) to an under cover Drug Enforcement Administration special agent.

32.   On or about June 6, 2001, **GEORGE JACKSON** and others possessed a quantity of cocaine base (crack cocaine).

33.   On or about August 16, 2001, **NAKIA HANKTON** and another possessed a firearm.

34.   On or about August 19, 2001, **TELLY HANKTON** discussed the distribution of one kilogram of cocaine hydrochloride (cocaine powder) with an associate.

35.   On or about November 29, 2001, **NAKIA HANKTON** distributed a quantity of marijuana.

36.   On or about December 1, 2001, **NAKIA HANKTON, DERRICK SMOTHERS** and others, possessed a quantity of marijuana, two firearms and ammunition.

37.   On or about April 2002, a known individual was asked to purchase a 2002 Cadillac Escalade on behalf of **TELLY HANKTON**.

38.   On or about April 2002, **TELLY HANKTON** paid a known individual cash on two separate occasions for the down payment placed on the Cadillac Escalade.

11

39.     On or about April 2002 to July 2007, **TELLY HANKTON** and his associates paid approximately $50,000 for the Cadillac Escalade.

40.     On or about December 7, 2002, **TELLY HANKTON** and an associate possessed a firearm and threw it out the window of an automobile while evading law enforcement officers.

41.     On or about December 7, 2002, **TELLY HANKTON** and an associate possessed a quantity of cocaine base (crack cocaine).

42.     Sometime between 2003 and August 2005, **TELLY HANKTON** purchased 5 to 6 kilograms bi-weekly from a source of supply in the New Orleans Metropolitan Area.

43.     On or about June 29, 2003, **TELLY HANKTON** possessed a firearm with a high capacity magazine.

44.     On or about January 15, 2004, **TELLY HANKTON** shot Brian Broussard and a known individual.

45.     On or about September 20, 2004, **TROY HANKTON, GEORGE JACKSON**, and another possessed a quantity of heroin.

46.     On or about November 17, 2004, **TELLY HANKTON** shot a known individual.

47.     Sometime in 2004, an associate and **TELLY HANKTON** transported a quantity of cocaine hydrochloride (cocaine powder).

48.     Sometime in 2004, **GEORGE JACKSON** distributed a quantity of cocaine hydrochloride (cocaine powder).

49.     Sometime in 2004, **TELLY HANKTON** and **GEORGE JACKSON** distributed a quantity of cocaine base (crack cocaine).

50.     On or about April 7, 2005, **GEORGE JACKSON** asked an associate to kill Darnell Stewart.

51.     On or about April 7, 2005, **TELLY HANKTON** gave associates a firearm while at **SHIRLEY HANKTON'S** house, and within minutes, the associates shot at a known individual and shot Brian Broussard and Darnell Stewart.

52.     Sometime in the summer of 2005, **GEORGE JACKSON** distributed a quantity of cocaine base (crack cocaine).

12

53.   Sometime in 2005, **TELLY HANKTON** threatened a former associate with a firearm.

54.   Sometime in 2005, **SHIRLEY HANKTON**, after being informed of **TELLY HANKTON'S** earlier threat to a former associate, arranged for a meeting between **TELLY HANKTON** and the former associate at **SHIRLEY HANKTON'S** house.

55.   Sometime in 2005, days after the initial meeting at **SHIRLEY HANKTON'S** house, **TELLY HANKTON** threatened the same former associate.

56.   Sometime in 2005, **SHIRLEY HANKTON** again arranged for **TELLY HANKTON** to meet with the former associate regarding the threats made by **TELLY HANKTON.**

57.   On or about August 20, 2005, **NAKIA HANKTON** possessed a quantity of marijuana.

58.   Sometime between August 2005 and June 2009, **TELLY HANKTON** purchased over 100 kilograms of cocaine hydrochloride (cocaine powder) from a source of supply in the Houston area of Texas.

59.   On or about January 30, 2007, **DERRICK SMOTHERS, TERRELL SMOTHERS**, and another, possessed a quantity of cocaine base (crack cocaine) and two firearms.

60.   On or about April 12, 2007, **TROY HANKTON** and **TELLY HANKTON** shot at Darnell Stewart and Jesse Reed and shot a known individual.

61.   On or about June 1, 2007, **TROY HANKTON** possessed a firearm.

62.   On or about July 2007, **SHIRLEY HANKTON** had a known individual transfer the title of the Cadillac Escalade to L.H., a family member.

63.   On or about September 26th and 27th, 2007, **TELLY HANKTON** and a drug source of supply discussed the price of one kilogram of heroin.

64.   On or about December 5, 2007, **NAKIA HANKTON** distributed a quantity of cocaine base (crack cocaine).

65.   Sometime in 2007, but before December 7, 2007, **TELLY HANKTON, GEORGE JACKSON**, and another associate threatened a source of supply and his family in the Houston area of Texas over a drug trafficking dispute, while armed with firearms.

66.   Sometime in 2008, an associate and **TELLY HANKTON** met with a drug source of supply in Texas and paid the drug source approximately $120,000 for cocaine hydrochloride (cocaine powder).

67.     On or about January 14, 2008, **TELLY HANKTON** shot at Darnell Stewart and shot Jesse Reed.

68.     On or about January 17, 2008, **TROY HANKTON** possessed a firearm.

69.     On or about May 13, 2008, **TELLY HANKTON** and Andre Reese Hankton engaged in a gun battle with Darnell Stewart while driving down Claiborne Avenue.

70.     On or about May 13, 2008, Darnell Stewart crashed his car and fled on foot, at which time Andre Reese Hankton chased and hit Darnell Stewart with his car.

71.     On or about May 13, 2008, **TELLY HANKTON** shot and killed Darnell Stewart after Andre Reese Hankton hit Darnell Stewart with the car.

72.     On or about May 13, 2008, Andre Hankton possessed a firearm.

73.     On or about sometime between May 21, 2008, and June 2, 2008, F.H., **SHIRLEY HANKTON** and others secured properties to post a $1,000,000 bond for **TELLY HANKTON** and ensure his release from jail.

74.     Between July 28, 2008, and March 7, 2009, **TELLY HANKTON** fled the Orleans Parish jurisdiction and the State of Louisiana to avoid prosecution for the murder of Darnell Stewart.

75.     Between June 6, 2008 and November 3, 2011, **SHIRLEY HANKTON** and associates paid over $100,000 in cash to **TELLY HANKTON'S** and **THOMAS HANKTON'S** attorney.

76.     On or about March 21, 2009, Andre Reese Hankton possessed a stolen handgun and a short-barrel shotgun while on bond for the murder of Darnell Stewart.

77.     On or about March 27, 2009, **SHIRLEY HANKTON** gave M.D. $7,000 and directed M.D. to purchase a cashier's check and pay **TELLY HANKTON'S** attorney.

78.     On or about June 20, 2009, **TELLY HANKTON, WALTER PORTER** and **KEVIN JACKSON** shot and killed Jesse Reed.

79.     Sometime in 2009 but after June 20, 2009, **KEVIN JACKSON** paid **WALTER PORTER** $10,000 or more for his participation in the killing of Jesse Reed.

80.     Sometime between June 22, 2009 and before February 3, 2011, **THOMAS HANKTON** purchased 5 to 10 kilograms of cocaine hydrochloride (cocaine powder) on at least four separate occasions from a source of supply in the Houston area of Texas.

14

81.  Sometime between June 22, 2009, and before February 3, 2011, **THOMAS HANKTON** told a drug source of supply that he needed to continue to purchase cocaine hydrochloride (cocaine powder) from the drug source of supply to make money to pay for **TELLY HANKTON'S** attorney.

82.  On or about July 1, 2009, **SHIRLEY HANKTON** gave M.D. $5,000 and directed M.D. to purchase a cashier's check and pay **TELLY HANKTON'S** attorney.

83.  On or about July 4, 2009, **WALTER PORTER** shot and killed Hasan Williams, an associate of Jesse Reed, who witnessed the murder of Jesse Reed.

84.  On or about sometime in 2009 but after July 4, 2009, **THOMAS HANKTON** paid **WALTER PORTER** $10,000 or more for killing Hasan Williams.

85.  Sometime in 2009 but after August 29, 2009, an associate in Orleans Parish Prison called **DERRICK SMOTHERS,** using a contraband cell phone, at the direction of **TELLY HANKTON,** who was also in jail, and instructed **DERRICK SMOTHERS** to tell **THOMAS HANKTON** to kill witness, J.M.

86.  On or about October 25, 2009, an associate bought a Romarm 7.62 caliber rifle on behalf of **WALTER PORTER.**

87.  Sometime in 2010-2011, but before February 3, 2011, **THOMAS HANKTON** offered to pay a witness to testify falsely at **TELLY HANKTON'S** first trial for the murder of Darnell Stewart and to provide an alibi for **TELLY HANKTON.**

88.  On or about sometime in 2010-2011, but before February 3, 2011, **THOMAS HANKTON** concocted a false alibi for D.H. and **SANA JOHNSON** to use while testifying on behalf of **TELLY HANKTON.**

89.  On or about October 24, 2010, **WALTER PORTER** shot J.M., a witness to the murder of Darnell Stewart.

90.  On or about October/November 2010, **THOMAS HANKTON** paid **WALTER PORTER** $10,000 or more for the shooting of witness J.M.

91.  Sometime in 2011, but after February 3, 2011, Netthany Schexnayder, an associate, took over **THOMAS HANKTON'S** role of facilitating perjured testimony at **TELLY HANKTON'S** murder trial by calling D.H. to ensure D.H. met with **TELLY HANKTON'S** attorney.

15

92.   Sometime in 2011, Netthany Schexnayder offered to pay **SANA JOHNSON** money to testify falsely at **TELLY HANKTON'S** murder trial.

93.   On or about February 3, 2011, **THOMAS HANKTON** possessed a firearm that was purchased by Netthany Schexnayder.

94.   On or about April 13, 2011, **DERRICK SMOTHERS** and **TERRELL SMOTHERS** distributed a quantity of marijuana.

95.   On or about July 28, 2011, D.H. and **SANA JOHNSON** committed perjury and testified about a false alibi on behalf of **TELLY HANKTON** at his first murder trial.

96.   Sometime in the summer of 2011, **WALTER PORTER** sold the Glock 9 mm, Serial Number AHS508, used in the murder of Jesse Reed and the attempted murder of J.M., to an individual.

97.   On or about October 15, 2011, **WALTER PORTER** shot and killed Curtis Matthews, the brother of J.M., who testified against **TELLY HANKTON.**

98.   On or about October 20, 2011, **WALTER PORTER** possessed ammunition and three firearms at his residence.

99.   On or about October 20, 2011, **WALTER PORTER** possessed ammunition and a firearm hidden in a secret compartment in his vehicle.

100.   Sometime between October and November 2011, associates retrieved more than $10,000 hidden beneath **WALTER PORTER'S** house and paid the money to **WALTER PORTER'S** attorney.

101.   On or about November 3, 2011, **SHIRLEY HANKTON** provided material false information to the federal grand jury.

## SPECIAL SENTENCING ALLEGATIONS

**The Grand Jury further alleges that:**

1.      Beginning on a date unknown, but prior to January 1996, and continuing to on or about the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, DERRICK SMOTHERS,** and **TERRELL SMOTHERS,** and others known and unknown to the Grand Jury, combined, conspired, confederated and agreed with each other to knowingly and intentionally distribute 280 grams or more of cocaine base (crack cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846.

2.      Beginning on a date unknown, but prior to January 1996, and continuing to on or about the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, DERRICK SMOTHERS,** and **TERRELL SMOTHERS,** and others known and unknown to the Grand Jury, combined, conspired, confederated and agreed with each other to knowingly and intentionally distribute five kilograms or more of cocaine hydrochloride (cocaine powder), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846.

17

3.      Beginning on a date unknown, but prior to January 1996, and continuing to on or about the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, defendants **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, DERRICK SMOTHERS,** and **TERRELL SMOTHERS**, and others known and unknown to the Grand Jury, combined, conspired, confederated and agreed with each other to knowingly and intentionally distribute one kilogram or more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846.

4.      On May 13, 2008, in the Eastern District of Louisiana and elsewhere, defendant **TELLY HANKTON** committed an act involving murder, to wit, with the specific intent to kill and inflict great bodily harm, did kill Darnell Stewart, in violation of the laws of the State of Louisiana, Title 14, Louisiana Revised Statutes, Sections 30.1 and 24.

5.      On June 20, 2009, in the Eastern District of Louisiana and elsewhere, defendants **WALTER PORTER** and **TELLY HANKTON** committed an act involving murder, to wit, with the specific intent to kill and inflict great bodily harm, did kill Jesse Reed, in violation of the laws of the State of Louisiana, Title 14, Louisiana Revised Statutes, Sections 30.1 and 24.

6.      On July 4, 2009, in the Eastern District of Louisiana and elsewhere, defendants **WALTER PORTER** and **THOMAS HANKTON** committed an act involving murder, to wit, with the specific intent to kill and inflict great bodily harm, did kill Hasan Williams, in violation of the laws of the State of Louisiana, Title 14, Louisiana Revised Statutes, Sections 30.1 and 24.

18

7.     On October 15, 2011, in the Eastern District of Louisiana and elsewhere,

defendant **WALTER PORTER** committed an act involving murder, to wit, with the specific

intent to kill and inflict great bodily harm, did kill Curtis Matthews, in violation of the laws of

the State of Louisiana, Title 14, Louisiana Revised Statutes, Sections 30 and 24.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2
(Conspiracy to Distribute Controlled Substances)

## THE CONSPIRACY:

Beginning on a date unknown, but prior to January 1996, and continuing to on or about

the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the

defendants, **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS**

**HANKTON, TROY HANKTON, GEORGE JACKSON, DERRICK SMOTHERS,** and

**TERRELL SMOTHERS,** knowingly and intentionally combined, conspired, confederated and

agreed with each other and with other persons known and unknown to the Grand Jury, to

distribute 280 grams or more of cocaine base ("crack cocaine"), five kilograms or more of

cocaine hydrochloride ("powder cocaine"), both Schedule II narcotic drug controlled substances,

one kilogram or more of heroin and a quantity of marijuana, both Schedule I drug controlled

substances; in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and

841(b)(1)(D); all in violation of Title 21, United States Code, Section 846.

## COUNT 3
(Conspiracy to Possess Firearms)

Beginning on a date unknown, but prior to January 1996, and continuing to on or about

the date of this Superseding Indictment, in the Eastern District of Louisiana, the defendants,

**ANDRE REESE HANKTON, NAKIA HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, KEVIN JACKSON, DERRICK SMOTHERS, TERRELL SMOTHERS** and **WALTER PORTER,** did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, during and in relation to a crime of violence and a drug trafficking crime, to use and carry firearms, and possess firearms in furtherance of a crime of violence and a drug trafficking crime as alleged in Counts 1 and 2, to wit: conspiracy to violate RICO and conspiracy to distribute controlled substances; all in violation of Title 18, United States Code, Section 924(o).

## COUNT 4
(Conspiracy to Obstruct Justice)

Between on or about June 23, 2007 and November 15, 2007, in the Eastern District of Louisiana, the defendant, **WALTER PORTER,** did knowingly and intentionally combine, conspire, confederate and agree with other persons known and unknown to the Grand Jury, to corruptly obstruct, influence, and impede an official proceeding by attempting to cause K.E. to falsely claim that G.H. did not possess the firearm on June 23, 2007, but rather that K.E. possessed it, in violation of Title 18, United States Code, Section 1512(c)(2); all in violation of Title 18, United States Code, Section 1512(k).

## COUNT 5
(Murder in Aid of Racketeering)

1.    At all times relevant to this Superseding Indictment, the enterprise as more fully described in Paragraphs 1 through 5, and 8 of Count 1, which are re-alleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United

20

States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was

engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise

constituted an ongoing organization whose members functioned as a continuing unit for a

common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Superseding Indictment, the above-described

enterprise, through its members and associates, engaged in racketeering activity as defined in

Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in

violation of Louisiana Revised Statutes; acts indictable under Title 18, United States Code,

Section 1956 (money laundering); and the conspiracy to distribute and distribution of controlled

substances, in violation of Title 21, United States Code, Sections 841 and 846.

3.      On or about May 13, 2008, in the Eastern District of Louisiana, as consideration

for the receipt of, and as consideration for a promise and an agreement to pay, anything of

pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining

and increasing position in the enterprise, an enterprise engaged in racketeering activity, the

defendants, **ANDRE REESE HANKTON** and **TELLY HANKTON,** with others known and

unknown to the Grand Jury, did murder Darnell Stewart, in violation of the laws of the State of

Louisiana, that is Title 14, Louisiana Revised Statute, Sections 30.1 and 24; all in violation of

Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT 6
(Causing Death Through the Use of a Firearm)

On or about May 13, 2008, in the Eastern District of Louisiana, the defendants, **ANDRE**

**REESE HANKTON** and **TELLY HANKTON,** and others known and unknown to the grand

jury, did knowingly use and carry a firearm during and in relation to a crime of violence and drug

trafficking crime for which they may be prosecuted in a court of the United States, to wit:

conspiracy to violate RICO and conspiracy to distribute controlled substances, as set forth in

Counts 1 and 2 of this Superseding Indictment; and in the course thereof caused the death of

Darnell Stewart through the use of a firearm, whose death constituted murder as defined in Title

18, United States Code, Section 1111, in that defendants willfully, deliberately, maliciously and

with malice aforethought, unlawfully killed and caused the death of Darnell Stewart; all in

violation of Title 18, United States Code, Sections 924(j)(1) and 2.

## COUNT 7
### (Possession of a Short-Barreled Shotgun)

On or about March 21, 2009, in the Eastern District of Louisiana, the defendant, **ANDRE**

**REESE HANKTON,** knowingly possessed a firearm which is not registered to him in the

National Firearms Registration and Transfer Record, to wit: a Winchester 20 gauge short-

barreled shotgun, bearing serial number L2013487; in violation of Title 26, United States Code,

Sections 5861(d) and 5871.

## COUNT 8
### (Murder in Aid of Racketeering)

1.      Paragraphs 1 through 2 of Count 5 are re-alleged and incorporated by reference as

though fully set forth herein.

2.      On or about June 20, 2009, in the Eastern District of Louisiana, as consideration

for the receipt of, and as consideration for a promise and an agreement to pay, anything of

pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining

and increasing position in the enterprise, an enterprise engaged in racketeering activity, the

defendants, **TELLY HANKTON, WALTER PORTER** and **KEVIN JACKSON,** with others known and unknown to the Grand Jury, did murder Jesse Reed, in violation of the laws of the State of Louisiana, that is Title 14, Louisiana Revised Statute, Sections 30.1 and 24; all in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT 9
(Causing Death Through the Use of a Firearm)

On or about June 20, 2009, in the Eastern District of Louisiana, the defendants, **TELLY HANKTON, WALTER PORTER** and **KEVIN JACKSON** and others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime for which they may be prosecuted in a court of the United States, to wit: conspiracy to violate RICO and conspiracy to distribute controlled substances, as set forth in Counts 1 and 2 of this Superseding Indictment; and in the course thereof caused the death of Jesse Reed through the use of a firearm, whose death constituted murder as defined in Title 18, United States Code, Section 1111, in that defendants willfully, deliberately, maliciously and with malice aforethought, unlawfully killed and caused the death of Jesse Reed; all in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

## COUNT 10
(Murder in Aid of Racketeering)

1.    Paragraphs 1 through 2 of Count 5 are re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about July 4, 2009, in the Eastern District of Louisiana, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining and

increasing position in the enterprise, an enterprise engaged in racketeering activity, the

defendants, **WALTER PORTER** and **THOMAS HANKTON,** with others known and

unknown to the Grand Jury, did murder Hasan Williams, in violation of the laws of the State of

Louisiana, that is Title 14, Louisiana Revised Statute, Sections 30.1 and 24;  all in violation of

Title 18, United States Code, Sections 1959(a)(1) and 2.

### COUNT 11
(Causing Death Through the Use of a Firearm)

On or about July 4, 2009, in the Eastern District of Louisiana, the defendants, **WALTER**

**PORTER** and **THOMAS HANKTON** and others known and unknown to the Grand Jury, did

knowingly use and carry a firearm during and in relation to a crime of violence and drug

trafficking crime for which they may be prosecuted in a court of the United States, to wit:

conspiracy to violate RICO and conspiracy to distribute controlled substances, as set forth in

Counts 1 and 2 of this Superseding Indictment; and in the course thereof caused the death of

Hasan Williams through the use of a firearm, whose death constituted murder as defined in Title

18, United States Code, Section 1111, in that defendants willfully, deliberately, maliciously and

with malice aforethought, unlawfully killed and caused the death of Hasan Williams; all in

violation of Title 18, United States Code, Sections 924(j)(1) and 2.

### COUNT 12
(Felon in Possession of a Firearm)

On or about November 3, 2009, in the Eastern District of Louisiana, the defendant,

**WALTER PORTER,** having previously been convicted of a crime punishable by

imprisonment for a term exceeding one year, to wit: a conviction on January 28, 2000, in

Orleans Parish Criminal District Court for the State of Louisiana, Case Number 409-693

24

"E," for aggravated battery, in violation of La. R.S. 14:34, and a conviction on August 5, 2004, in Orleans Parish Criminal District Court for the State of Louisiana, Case Number 444-234 "K," for attempted distribution of marijuana, in violation of La.R.S. 40:(979)966, did knowingly possess in and affecting interstate commerce an unknown make and model firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), and Title 18, United States Code, Section 2.

## COUNT 13
### (Assault with a Dangerous Weapon in Aid of Racketeering)

1.      Paragraphs 1 through 2 of Count 5 are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about October 24, 2010, in the Eastern District of Louisiana, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining and increasing their positions in the enterprise, an enterprise engaged in racketeering activity, the defendants **THOMAS HANKTON, TELLY HANKTON,** and **WALTER PORTER,** with others known and unknown to the Grand Jury, did commit an assault with a dangerous weapon on J.M., in violation of the laws of the State of Louisiana, that is Title 14, Louisiana Revised Statute, Sections 37.4 and 24; all in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT 14
(Use and Carrying of a Firearm During and in Relation to a
Crime of Violence and a Drug Trafficking Crime)

On or about October 24, 2010, in the Eastern District of Louisiana, the defendants,

**THOMAS HANKTON, TELLY HANKTON,** and **WALTER PORTER**, and others known

and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to a

crime of violence and drug trafficking crime for which he may be prosecuted in a court of the

United States, to wit: conspiracy to violate RICO and conspiracy to distribute controlled

substances, as set forth in Counts 1 and 2 of this Superseding Indictment, which are incorporated

herein; all in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT 15
(Murder in Aid of Racketeering)

1.      Paragraphs 1 through 2 of Count 5 are re-alleged and incorporated by reference as

though fully set forth herein.

2.      On or about October 15, 2011, in the Eastern District of Louisiana, as

consideration for the receipt of, and as consideration for a promise and an agreement to pay,

anything of pecuniary value from the enterprise, and for the purpose of gaining entrance to and

maintaining and increasing position in the enterprise, an enterprise engaged in racketeering

activity, the defendant, **WALTER PORTER,** with others known and unknown to the Grand

Jury, did murder Curtis Matthews, in violation of the laws of the State of Louisiana, that is Title

14, Louisiana Revised Statute, Sections  30.1 and 24;  all in violation of Title 18, United States

Code, Sections 1959(a)(1) and 2.

26

## COUNT 16
(Causing Death Through the Use of a Firearm)

On or about October 15, 2011, in the Eastern District of Louisiana, the defendant,

**WALTER PORTER,** did knowingly use and carry a firearm during and in relation to a crime of

violence and drug trafficking crime for which he may be prosecuted in a court of the United

States, to wit: conspiracy to violate RICO and conspiracy to distribute controlled substances, as

set forth in Counts 1 and 2 of this Superseding Indictment; and in the course thereof caused the

death of Curtis Matthews through the use of a firearm, whose death constituted murder as

defined in Title 18, United States Code, Section 1111, in that defendant willfully, deliberately,

maliciously and with malice aforethought, unlawfully killed and caused the death of Curtis

Matthews; all in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

## COUNT 17
(Conspiracy to Commit Misprision of a Felony)

**A.**     **At all times material herein:**

1. On May 13, 2008, Andre Hankton was arrested for the murder of Darnell Stewart.

2. On May 21, 2008, Telly Hankton was arrested for the murder of Darnell Stewart.

3. On July 10, 2008, the grand jury for Orleans Parish indicted Telly Hankton and Andre

Hankton with the first degree murder of Darnell Stewart in violation of La. R.S. 14:30. The case

was assigned docket number 479354 "L."

4. On February 3, 2009, the Orleans Parish District Attorney's Office amended the

indictment of Telly Hankton and Andre Hankton charging each with the second degree murder of

Darnell Stewart in violation of La. R.S. 14:30.1.

5. From July 26, 2011 through July 29, 2011, the State of Louisiana, by and through the

27

Orleans Parish District Attorney's Office, tried Telly Hankton for the second degree murder of

Darnell Stewart resulting in a hung jury.

6. On July 28, 2011, **SANA JOHNSON** testified as a witness in the trial of Telly

Hankton.

## B.    The Conspiracy:

Beginning at a time unknown, but on or before the fall of 2010 and continuing until the

date of this Superseding Indictment, **THOMAS HANKTON, NETTHANY SCHEXNAYDER,**

and **SANA JOHNSON** and others known and unknown to the Grand Jury, did knowingly and

willfully combine, conspire and agree with each other to knowingly commit the crime of

Misprision of a Felony, having knowledge of the actual commission of felonies, to wit: murder in

aid of racketeering in violation of Title 18, United States Code Sections 1959(a)(1) and 2, as

charged in Count 5, as well as the knowing use and carrying of a firearm during and in relation to

a crime of violence and a drug trafficking crime in violation of Title 18, United States Code,

Sections 924(j)(1) and 2, as charged in Count 6, and **THOMAS HANKTON, NETTHANY**

**SCHEXNAYDER,** and **SANA JOHNSON** concealed and did not as soon as possible make

known the same to some judge or other person in civil or military authority under the United

States; in violation of Title 18, United States Code, Section 4.

## C.    Overt Acts:

Paragraphs 87, 88, 91, 92, and 95, of Count 1 of this Superseding Indictment are re-

alleged and incorporated as though fully set forth herein.

All in violation of Title 18, United States Code, Section 371.

## COUNT 18
### (Accessory After the Fact to Murder)

Beginning at a time unknown, but on or before the fall of 2010 and continuing until the date of this Superseding Indictment, in the Eastern District of Louisiana, **THOMAS HANKTON, NETTHANY SCHEXNAYDER,** and **SANA JOHNSON,** defendants herein, knowing that an offense against the United States has been committed, to wit: murder in aid of racketeering in violation of Title 18, United States Code Sections 1959(a)(1) and 2, as charged in Count 5, as well as the knowing use and carrying of a firearm during and in relation to a crime of violence and a drug trafficking crime in violation of Title 18, United States Code, Section 924(j)(1) and 2, as charged in Count 6, did receive, relieve, comfort and assist the offender, Telly Hankton, in order to hinder and prevent the offender's apprehension, trial and punishment; all in violation of Title 18, United States Code, Section 3.

## COUNT 19
### (Felon in Possession of a Firearm)

On or about October 20, 2011, in the Eastern District of Louisiana, the defendant, **WALTER PORTER,** having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: a conviction on January 28, 2000, in Orleans Parish Criminal District Court for the State of Louisiana, Case Number 409-693 "E," for aggravated battery, in violation of La. R.S. 14:34, and a conviction on August 5, 2004, in Orleans Parish Criminal District Court for the State of Louisiana, Case Number 444-234 "K," for attempted distribution of marijuana, in violation of La. R.S. 40:(979)966, did knowingly possess in and affecting interstate commerce, ammunition and a firearm, to wit: a Romarm 7.62 caliber semi-automatic assault rifle, serial number 1971DF4985; all in violation of Title 18, United States

Code, Sections 922(g)(1) and 924(a)(2), and Title 18, United States Code, Section 2.

## COUNT 20
### (Felon in Possession of a Firearm)

On or about October 20, 2011, in the Eastern District of Louisiana, the defendant,

**WALTER PORTER,** having previously been convicted of a crime punishable by imprisonment

for a term exceeding one year, to wit: a conviction on January 28, 2000, in Orleans Parish

Criminal District Court for the State of Louisiana, Case Number 409-693 "E," for aggravated

battery, in violation of La. R.S. 14:34, and a conviction on August 5, 2004, in Orleans Parish

Criminal District Court, Case Number 444-234 "K," for attempted distribution of marijuana, in

violation of La. R.S. 40:(979)966, did knowingly possess in and affecting interstate commerce,

ammunition and a firearm, to wit: a Glock, model 17, 9mm semi-automatic handgun, serial

number PFD712; all in violation of Title 18, United States Code, Sections 922(g)(1) and

924(a)(2), and Title 18, United States Code, Section 2.

## COUNT 21
### (Money Laundering Conspiracy)

From on or about 2002 and continuing until approximately November 3, 2011, in the

Eastern District of Louisiana and elsewhere, **TELLY HANKTON, THOMAS HANKTON,**

and **SHIRLEY HANKTON**, did knowingly and intentionally combine, conspire, confederate

and agree with each other and with others known and unknown to the Grand Jury to knowingly

and willfully conduct and attempt to conduct financial transactions affecting interstate and

foreign commerce, which involved the proceeds of a specified unlawful activity, that is

conspiracy to violate RICO and conspiracy to distribute controlled substances, knowing that the

transactions were designed in whole or in part to promote the carrying on of said specified

unlawful activity and to conceal and disguise the nature, location, source, ownership, and control

of the proceeds of said specified unlawful activity and that while conducting and attempting to

conduct such financial transactions knew that the property involved in the financial transactions,

represented the proceeds of some form of unlawful activity, in violation of Title 18, United States

Code, Sections 1956(a)(1)(A)(i) and (B)(i); all in violation of Title 18, United States Code,

Section 1956(h).

**COUNT 22**
(Perjury)

**A.      The Grand Jury Investigation:**

On or about November 3, 2011, the United States Grand Jury for the Eastern District of

Louisiana had been duly empaneled and sworn by the United States District Court for the Eastern

District of Louisiana. The United States Grand Jury was inquiring into matters and conducting

proceedings in which the laws of the United States authorized an oath to be administered to

witnesses. On or about that date, the United States Grand Jury for the Eastern District of

Louisiana was conducting an investigation to determine whether an illegal drug distribution and

violent crime conspiracy existed in violation of Title 18, United States Code, Sections 924 and

1962, and Title 21, United States Code, Section 846, and the defendant, **SHIRLEY**

**HANKTON's** knowledge of it.

**B.      Materiality:**

It was material to the Grand Jury investigation to determine if the members of the

conspiracy, including **SHIRLEY HANKTON,** had knowledge of large amounts of United States

currency and purchases of goods and services with United States currency.

31

C.    **Material False Statements:**

On or about November 3, 2011, in the Eastern District of Louisiana, **SHIRLEY**

**HANKTON**, under oath and duly sworn to testify truthfully as a witness in a proceeding before

the United States Grand Jury did knowingly and unlawfully and contrary to said oath make

certain material false statements as follows:

Q. "Who bought the truck?"

A. "I don't know who bought the truck from."

Q. "Okay. Did– do you know if Leonard bought the truck? Or you're not sure who
bought the truck?"

A. "No. I think it was gave to him. I'm not really sure."

The aforesaid underscored testimony of **SHIRLEY HANKTON**, as she then and there

well knew and believed, was false in that **SHIRLEY HANKTON** did know who purchased the

truck.

All in violation of Title 18, United States Code, Section 1623.

## NOTICE OF RICO FORFEITURE

1.    The allegations contained in Count 1 of this Superseding Indictment are hereby re-

alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18,

United States Code, Sections 1963 and Title 28, United States Code, Section 2461(c). Pursuant

to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will

seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section

1963 in the event of any defendant's conviction under Count 1 of this Superseding Indictment.

2.      Pursuant to Title 18, United States Code, Section 1963, upon conviction of an offense in violation of Title 18, United States Code, Section 1962, the defendants, **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, WALTER PORTER, DERRICK SMOTHERS,** and **TERRELL SMOTHERS** shall forfeit to the United States of America:

a.      any interest acquired or maintained in violation of section 1962;

b.      any interest in, security of, claim against, and/or property and contractual rights of any kind affording a source of influence over any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962;

c.      any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 1962, including but not limited to;

d.      Additionally, the properties to be forfeited as involved in the aforesaid violations of Section 1962.

3.      The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

a.      at least $43.2 million

4.      The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

33

5.       If any of the property described above, as a result of any act or omission of the defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 18, United States Code, Section 1963(m).

All in violation of Title 18, United States Code, Section 1963.

## NOTICE OF GUN FORFEITURE

1.       The allegations of Counts 3, 6, 7, 9, 11, 12, 14, 16, 19, and 20 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 924(d)(1), made applicable through Title 28, United States Code, Section 2461(c).

2.       As a result of the offenses alleged in Counts 3, 6, 7, 9, 11, 12, 14, 16, 19, and 20, defendants **ANDRE REESE HANKTON, NAKIA HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, KEVIN JACKSON, DERRICK SMOTHERS, TERRELL SMOTHERS** and **WALTER PORTER,** shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d)(1), made applicable

34

through Title 28, United States Code, Section 2461(c), any firearm or ammunition, which was involved in or used in a knowing violation of Title 18, United States Code, Sections 922(g)(1), 924(c)(1)(A), 924(j)(1) and 924(o), as alleged in Counts 3, 6, 7, 9, 11, 12, 14, 16, 19, and 20 of this Superseding Indictment, including, but not limited to:

3.      If any of the property subject to forfeiture pursuant to Paragraph 2 of this Notice of Forfeiture, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 924(d)(1), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF DRUG FORFEITURE

1.      The allegations of Count 2 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853.

2.      As a result of the offenses alleged in Count 2, the defendants, **NAKIA HANKTON, SHIRLEY HANKTON, TELLY HANKTON, THOMAS HANKTON, TROY HANKTON, GEORGE JACKSON, KEVIN JACKSON, DERRICK SMOTHERS,** and **TERRELL SMOTHERS,** shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Count 2 of this Superseding Indictment.

3.      If any of the property subject to forfeiture pursuant to Paragraph 2 of this Notice of Forfeiture, as a result of any act or omission of the defendants:

a.       cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.       has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.       has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 21, United States Code, Section 853.

## NOTICE OF MONEY LAUNDERING FORFEITURE

1.      The allegations of Count 21 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2.      As a result of the offenses, alleged in Count 21, defendants, **TELLY HANKTON, THOMAS HANKTON,** and **SHIRLEY HANKTON,** shall forfeit to the United States all property, real or personal, involved in the aforesaid offenses and all property traceable to such property.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third person;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 982.

37

## NOTICE OF SPECIAL FINDINGS

1.     The Grand Jury incorporates by reference and realleges the allegations contained in Counts 5, 6, 8, 9, 10, 11, 15, and 16 and makes the following special findings:

2.     As to Counts 5 and 6, defendants **ANDRE REESE HANKTON** and **TELLY HANKTON,**

      a.     were 18 years of age or older at the time of the offense;

      b.     intentionally killed Darnell Stewart (18 U.S.C. § 3591(a)(2)(A));

      c.     intentionally inflicted serious bodily injury that resulted in the death of Darnell Stewart;

      d.     intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Darnell Stewart died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C));

      e.     intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Darnell Stewart died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(D));

      f.     knowingly created a grave risk of death to one or more persons in addition to the victim of the offense in the commission of the offense or in escaping

38

apprehension for the violation of the offense (18 U.S.C. § 3592 (c)(5));
and

g.      committed the offense after substantial planning and premeditation to
cause the death of Darnell Stewart (18 U.S.C. § 3592(c)(9)).

3.      As to Counts 8 and 9, defendants **WALTER PORTER, TELLY HANKTON**
and **KEVIN JACKSON,**

a.      were 18 years of age or older at the time of the offenses;

b.       intentionally killed Jesse Reed  (18 U.S.C. § 3591(a)(2)(A));

c.      intentionally inflicted serious bodily injury that resulted in the death of
Jesse Reed (18 U.S.C. § 3591(a)(2)(B));

d.      intentionally participated in one or more acts, contemplating that the life of
a person would be taken or intending that lethal force would be used in
connection with a person, other than a participant in the offense, and Jesse
Reed died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C));

e.      intentionally and specifically engaged in one or more acts of violence,
knowing that the act or acts created a grave risk of death to a person, other
than one of the participants in the offense, such that participation in such
act or acts constituted a reckless disregard for human life, and Jesse Reed
died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(D));

f.      committed the offense after previous conviction of violent felony
involving firearm (18 U.S.C. § 3592(c)(2)) (as to defendants Walter Porter
and Kevin Jackson);

39

    g.    knowingly created a grave risk of death to one or more persons in addition to the victim of the offense in the commission of the offense or in escaping apprehension for the violation of the offense (18 U.S.C. § 3592 (c)(5));

    h.    procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value (18 U.S.C. § 3592(c)(7)) (as to defendants Telly Hankton and Kevin Jackson);

    i.    committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8)) (as to defendant Walter Porter);

    j.    committed the offense after substantial planning and premeditation to cause the death of Jesse Reed (18 U.S.C. § 3592(c)(9)).

4.    As to Counts 10 and 11, defendants **WALTER PORTER** and **THOMAS HANKTON**,

    a.    were 18 years of age or older at the time of the offenses;

    b.    intentionally killed Hasan Williams (18 U.S.C. § 3591(a)(2)(A));

    c.    intentionally inflicted serious bodily injury that resulted in the death of Hasan Williams (18 U.S.C. § 3591(a)(2)(B));

    d.    intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Hasan Williams died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C));

40

e.   intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Hasan Williams died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(D));

f.   committed the offense after previous conviction of violent felony involving firearm (18 U.S.C. § 3592(c)(2)) (as to defendant Walter Porter);

g.   procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value (18 U.S.C. § 3592(c)(7) (as to defendant Thomas Hankton);

h.   committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8)) (as to defendant Walter Porter);

i.   committed the offense after substantial planning and premeditation to cause the death of Hasan Williams (18 U.S.C. § 3592(c)(9)).

5.   As to Counts 15 and 16, defendant **WALTER PORTER**,

a.   was 18 years of age or older at the time of the offenses;

b.   intentionally killed Curtis Matthews  (18 U.S.C. § 3591(a)(2)(A));

c.   intentionally inflicted serious bodily injury that resulted in the death of Curtis Matthews (18 U.S.C. § 3591(a)(2)(B));

d.   intentionally participated in one or more acts, contemplating that the life

41

of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Curtis Matthews died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C));

e.      intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Curtis Matthews died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(D));

f.      committed the offense after previous conviction of violent felony involving firearm (18 U.S.C. § 3592(c)(2));

g.      knowingly created a grave risk of death to one or more persons in addition to the victim of the offense in the commission of the offense or in escaping apprehension for the violation of the offense (18 U.S.C. § 3592(c)(5));

h.      committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8)); and

    i.      committed the offense after substantial planning and premeditation to

cause the death of Curtis Matthews (18 U.S.C. § 3592(c)(9)).

A TRUE BILL:

_____
FOREPERSON

_____
JIM LETTEN
United States Attorney
Louisiana Bar. Roll No. 8517

_____
JAN MASELLI MANN
First Assistant United States Attorney
Louisiana Bar Roll No. 9020

_____
ELIZABETH PRIVITERA
Assistant United States Attorney
Louisiana Bar Roll No. 27042

_____
WILLIAM J. QUINLAN, JR.
Assistant United States Attorney
Louisiana Bar Roll No. 22600

New Orleans, Louisiana
October 18, 2012

FORM OBD-34

No. __12-001 "F"__

UNITED STATES DISTRICT COURT

__Eastern__   District of   __Louisiana__

__Criminal__   __Division__

# THE UNITED STATES OF AMERICA

vs.

WALTER PORTER, a/k/a "Urkel," a/k/a "Moonie", ANDRE
HANKTON, NAKIA HANKTON, SHIRLEY HANKTON, TELLY
HANKTON, a/k/a "Third", a/k/a "Wild", THOMAS HANKTON,
a/k/a "Squirt", TROY HANKTON, GEORGE JACKSON, a/k/a
"Black", KEVIN JACKSON, NETHANY SCHEXNAYDER,
DERRICK SMOTHERS, a/k/a "Dump", TERREL SMOTHERS AND
SANA JOHNSON

## INDICTMENT

SUPERSEDING INDICTMENT FOR VIOLATIONS OF THE
RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT,
THE VIOLENT CRIME IN AID OF RACKETEERING ACT, THE
FEDERAL CONTROLLED SUBSTANCES ACT, THE FEDERAL
GUN CONTROL ACT, PERJURY, MONEY LAUNDERING,
MISPRISION OF A FELONY AND OBSTRUCTION OF JUSTICE

VIOLATIONS: 18 U.S.C. § 1962(d), 1959, 924,
922(g)(1), 1956(h), 1623, 371, 3 and 1512, 21 U.S.C. § 841
and 846 and 26 U.S.C. § 5861

A true bill.

_Donald Stewart_
Foreperson

Filed in open court this ___ day, of _____ A.D. 2012.

_____
Clerk

Bail, $ _____

ELIZABETH PRIVITERA
Assistant United States Attorney

_Elizabeth Privitera_